UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cr-94 |
| | ) | Judge Varlan |
| PORTIA ANYAMBA, | ) | |
| also known as "Posh" | ) | |

## **UNITED STATES' SENTENCING MEMORANDUM**

While working as a contractor at Oak Ridge National Laboratory, the defendant sought to obtain a security clearance, potentially granting her access to classified information concerning the national security of the United States. At the same time, she was covertly providing information to high-ranking intelligence officers employed by the Republic of South Africa. During the vetting process to which all security-clearance applicants are subject, the defendant lied about her contact with the intelligence officers, and she attempted to enlist others to buttress her deception.

The United States has no information that the defendant actually accessed or transmitted classified information to third parties. And since her arraignment on the charges for which she now faces sentencing, she has indicated remorse and an apparent capacity to rehabilitate herself. Nevertheless, this offense is serious, particularly given the nature of the facility where the defendant was employed. Further, the defendant's conduct shows a disrespect for the law, and it is imperative that the Court's sentence serves to highlight the importance of candor for those seeking security clearances and to deter anyone who would attempt to obtain a clearance while covertly acting as an agent of a foreign government.

Based on the only applicable Guideline, the United States Sentencing Guidelines permit a non-custodial sentence in this case. *See* U.S.S.G. §§ 5B1.1, 5C1.1.[1]  However, there is no Guideline directly applicable to the leading count of conviction, and reference analogies to other Guidelines are, at best, strained.  The Court, therefore, should impose a sentence by reference to the factors in 18 U.S.C. § 3553(a).

Ultimately, the factors articulated in 18 U.S.C. § 3553(a) call for a sentence that includes some term of imprisonment, which the United States requests the Court impose.[2]  As limited by the provisions of Paragraph 6 of the Plea Agreement – *i.e.*, a recommendation pursuant to Fed. R. Crim. P. 11(c)(1)(C) that a sentence not exceeding 21 months' imprisonment is the appropriate disposition of this case – the United States defers to the Court's discretion as to the appropriate length of imprisonment.

## BACKGROUND

Oak Ridge National Laboratory ("ORNL") was founded in 1943 as part of the Manhattan Project, and it is the U.S. Department of Energy's ("DOE") largest science and energy laboratory. *Oak Ridge National Laboratory: About Us*, https://www.ornl.gov/overview (last visited May 29, 2026).  ORNL operates at the cutting edge of nuclear science and engineering, and it is a world leader in its mission applying scientific and technical principles to energy, environmental, and national-security challenges. *Id.*   Among other things, it conducts focused research into topics including cyber resilience and intelligence, defense manufacturing, geospatial science and human security, and nuclear nonproliferation. *Oak Ridge National*

---

[1] Specifically, U.S.S.G. § 5B1.1(a) authorizes a sentence of probation, potentially including conditions such as community confinement, home detention, or intermittent confinement.  U.S.S.G. § 5B1.1(a), cmt. n.1(A).
[2] Though the Government does not believe it necessary, to the extent the Court deems this request to require motion to vary from the Sentencing Guidelines, the United States so moves pursuant to E.D. Tenn. L.R. 83.9(j).

2

*Laboratory: National Security Sciences Directorate*, https://www.ornl.gov/science-area/national-security (last visited May 29, 2026).

As set out in the Presentence Investigation Report ("PSR"), the defendant was employed at ORNL until late 2024.[3] (PSR, ¶ 15). She was hired in 2023 as a Program Management Operational Specialist in the National Security Program Office. (*Id.*). The defendant's spouse, who was also employed at ORNL, held a security clearance, authorizing his access to classified information relevant to the United States' national security. (*Id.*).

At no time has the defendant registered as an agent of a foreign government or otherwise provided requisite notice to the Attorney General concerning her actions on behalf of a foreign government. (*Id.* at ¶ 21).

Beginning no later than 2022, the defendant functioned as an agent for the Republic of South Africa ("RSA"). (*Id.* at ¶¶ 16, 33). She was in regular contact with foreign intelligence officials, including a high-ranking intelligence officer ("IO-1") employed by the South African State Security Agency ("SSA"), *i.e.*, the South African Government's civilian intelligence agency. (*Id.* at 18). Among other things, IO-1 paid the defendant to attend public "think tank" events and provide written reports for the RSA's benefit. (*Id.* at ¶¶ 29-38). IO-1 would also arrange and pay for covert meetings with the defendant at various locations, including the South African Embassy in Washington, D.C., and restaurants and hotels in Knoxville, Tennessee. (*Id.* at ¶¶ 19-20).

---

[3] This memorandum may, at times, refer to the defendant as "employed at ORNL" or as an "ORNL employee." For the sake of precision, her employer was UT-Battelle, which "was established in 1999 as a private not-for-profit company for the sole purpose of managing and operating the Oak Ridge National Laboratory for the U.S. Department of Energy . . . [and is] the legal entity responsible delivering the Department of Energy's research mission at ORNL." *UT-Battelle: About*, https://www.ut-battelle.org/about/ (last accessed May 29, 2026).

In mid-2024, through her employment at ORNL, the defendant submitted a certified SF-86 form in connection with her application for a security clearance.  (*Id.* at ¶ 22).  The SF-86 is a form used by agencies within the United States Government as one part of the process to evaluate an individual's suitability for national-security positions and access to classified information.  (*Id.*).  On its face, the SF-86 specifically advises applicants that providing false statements in response to its questions may result in federal criminal charges pursuant to 18 U.S.C. § 1001.  (*Id.* at ¶ 23).

The SF-86 form submitted and certified by the defendant contained various questions concerning the defendant's affiliation and contact with foreign nationals and foreign governments.  (*See id.* at ¶ 24).  The defendant attested that she did not have ongoing contact with foreign nationals and that she had not been in contact with representatives of foreign governments.  (*Id.*).   These attestations were lies.  (*Id.*).

The SF-86 also requires applicants to provide references for various purposes.  Prior to submitting her SF-86, the defendant contacted two of her references and asked them, in the event they were contacted by investigators, not to mention her "foreign connections" or "anything about the embassy."  (*Id.* at ¶ 25).

The defendant, IO-1, and another individual associated with the RSA Government ("Individual 2") planned a November 2024 meeting at a restaurant in Knoxville's Turkey Creek commercial district.  (*Id.* at ¶ 28).   Prior to the meeting, IO-1 instructed the defendant to "bring the laptop."  (*Id.* at ¶ 26).  Unbeknownst to the defendant, IO-1, or Individual 2, FBI agents learned of this meeting and had obtained search warrants for the defendant's property and other devices in the defendant's custody or control.  (*Id.* at ¶ 27).

FBI agents disrupted the defendant's planned meeting with her RSA contacts. As expected, she had a laptop in possession, which the FBI seized. (Id at ¶ 28). The defendant made a number of inculpatory statements to investigators, including that: she conducted activities in the United States at IO-1's instruction; the laptop in her custody was provided to her by IO-1; she was paid by IO-1; she knew that IO-1 was employed by RSA; and she did not disclose her relationship with IO-1 in her responses on her SF-86. (*Id.* at ¶ 29).

On August 28, 2025, the United States Attorney for the Eastern District of Tennessee filed a Bill of Information charging the defendant with two criminal counts: acting as an agent of a foreign government, in violation of 18 U.S.C. § 951(a) ("Count One"); and making false statements, in violation of 18 U.S.C. § 1001(a)(2) ("Count Two"). (Doc. 3). Pursuant to a written plea agreement (Doc. 4), on October 27, 2025, the defendant pleaded guilty to both counts. (*See* Doc. 11).

The PSR correctly states that the defendant has no criminal history, resulting in a Criminal History Category of I pursuant to the United States Sentencing Guidelines. (PSR ¶ 57). As to Count Two, the PSR identifies a Base Offense Level of 6, which is reduced by four points pursuant to U.S.S.G. §§ 3E1.1 and 4C1.1. (*Id.* at ¶¶ 44-52). This yields a Total Offense Level of 2. As to that count only, the defendant's Guidelines range is zero to six months' imprisonment. (*Id.* at ¶ 76).

There is no Sentencing Guideline applicable to Count One. Although U.S.S.G. § 2X5.1 states that the Court should, if possible, apply the "most analogous" Guideline, the United States concurs with the PSR writer that – considering the specific facts of this case – there is no sufficiently analogous Guideline on which the Court should rely. Thus, the Court's analysis of Count One should be guided solely by the considerations articulated in 18 U.S.C. § 3553(a).

5

Here, in view of the unique circumstances presented – including all facts militating in the defendant's favor – the United States submits that a sentence of imprisonment is sufficient, but not greater than necessary, to comply with the dictates of Section 3553.

**ANALYSIS**

As the Court is aware, its sentencing analysis is guided by 18 U.S.C. § 3553(a), and the sentence it imposes must account for the factors set forth therein, including: the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, protect the public, and afford adequate deterrence. The facts now before the Court touch on a variety of these factors simultaneously, and the United States will address them accordingly.

I. *The Offense Conduct is Serious, and a Custodial Sentence is Necessary to Reflect that Seriousness and Promote Respect for the Law.*

ORNL works with some of the most sensitive and sophisticated issues handled by the United States Government. Its employees share a mission to ensure American scientific preeminence in fields no less important than nuclear proliferation, high-performance computing, and national defense. It is no exaggeration to say that ORNL is a critical player in the nation's efforts to maintain global stability and technological leadership. Its operational security and integrity are extraordinarily compelling interests that must be protected.

Under any circumstances, it is unacceptable for Americans to operate covertly at the direction and control of foreign intelligence officers. That is especially true for ORNL employees. And when an ORNL employee is actively seeking a security clearance that would

allow access to information affecting the security of the United States, secret dealings with foreign intelligence agents are matters of profound concern.

To be clear, the United States does not allege that the defendant transmitted classified or other national defense information to foreign operatives. Indeed, if she had, the United States would very likely have a different position as to this case's resolution and appropriate sentencing outcome. Nonetheless, the risk the defendant posed to U.S. national security was real: She sought access to classified information while engaged in a clandestine relationship with a foreign intelligence officer.

The defendant knew her clandestine meetings with foreign intelligence agents were impermissible, and so she took steps to cover them up, underscoring the seriousness of her criminal offense and demonstrating a lack of respect for the law. Her overt lies on the SF-86 were substantial on their own, and they serve as an instructive window into her mental state. But here, the defendant was particularly brazen, going so far as to enlist others to lie for her.

The facts before the Court are straightforward. The defendant was secretly taking direction from and providing information to a foreign government. She did so as an employee of a sensitive facility that handles matters affecting national defense and global security. While still under the control of foreign intelligence officers, she actively sought a security clearance that would grant her access classified information. The defendant knew she was committing a crime, and she went out of her way to cover her tracks.

This offense demands consequence. Its seriousness, combined with the defendant's demonstrated lack of respect for the law, points to only one conclusion: the Court should sentence the defendant to federal prison.

## II.     *The Court Should Consider the Defendant's History and Characteristics.*

The defendant is a 59-year-old naturalized American citizen with no criminal history. The United States does not contest that she has demonstrated remorse and a potential for reform. The Court should consider these facts – and others militating in her favor – when it imposes its sentence.[4]

The Court should also consider that the defendant holds multiple graduate degrees and professional certificates, and she previously served in the South African Air Force, ultimately reaching the rank of Brigadier General.  Her military service included command roles and international duties as a defense attaché.  The defendant is sophisticated.  Her lived experience surely taught her of the importance countries place on their national defense, the sound reasons for robust prohibitions on citizens acting as surreptitious foreign agents, and the necessity to safeguard sensitive information.  The Court should not overlook that experience.  In spite of it, the defendant still committed the crimes for which she now faces sentencing.

Though much of the defendant's history and many of her characteristics work to her advantage, this sentencing factor does not universally operate in her favor.  A sentence that includes a term of imprisonment would not offend § 3553(a)(1).

## III.     *A Custodial Sentence is Necessary for Deterrence.*

The institution at which the defendant worked is of unique sensitivity and importance. And the security clearance sought by the defendant is appropriate only for those whose personal and professional history affirmatively indicates loyalty to the United States, along with strength

---

[4] As noted in other filings before the Court, the United States and defense counsel may request a sealed sidebar if the Court wishes to hear more context concerning this sentencing factor.

of character, trustworthiness, honesty, reliability, discretion, and sound judgment, as well as freedom from conflicting allegiances and potential for coercion.[5]   While it appears that the defendant herself may be unlikely (or unable) to engage in similar crimes in the future, the Court's sentence should serve to deter those situated like her from attempting to repeat her conduct.

Put very simply: people who work at facilities engaged in matters affecting the national security of the United States should not be conducting secret meetings with foreign intelligence agents.[6]   Those seeking access to classified information are rightly expected to be truthful and forthcoming in their application process.  The SF-86 and the related vetting process are designed to ensure that would-be clearance holders do not bear affinity or allegiance to foreign governments – the exact kind of affiliation that the defendant had and lied about.

The Court's sentence should reaffirm the importance of these critical security principles to all who would seek to flout them.  Ultimately, the security of the nation's most valuable and sensitive secrets depends on the trustworthiness and reliability of the people granted access to them.   A sentence of imprisonment is necessary to send the message that dishonesty in the security-clearance application process – especially regarding relationships with foreign intelligence services – will not be tolerated.

IV.      *A Term of Imprisonment Would not Create Unwarranted Sentencing Disparities.*

Generally, Section 3553(a)'s admonition to avoid unwarranted national sentencing disparities is well-served by a sentence within the Guidelines.  *See United States v. Swafford*, 639

---

[5] *See* E.O. 12968, *Access to Classified Information*, 60 Fed. Reg. 40245, August 2, 1995.
[6] The United States reiterates that it possesses no information indicating that the defendant actually accessed or transmitted classified information to a third party.

9

F.3d 265, 270 (6th Cir. 2011).  The PSR notes JSIN data suggesting that, for other defendants sharing this defendant's Guidelines computation, the median sentence does not include a term of imprisonment.  (PSR, ¶ 105).  "But because the point of the guidelines is to reduce disparities, general statistics that cover a multitude of other crimes committed in a multitude of other ways do not create an 'unwarranted' disparity."  *United States v. Mullet*, 822 F.3d 842, 854 (6th Cir .2016).  More to the point, in this case, the Guidelines are of uncommonly limited utility.  Indeed, no Guideline whatsoever applies to Count One.

This is a unique case with uncommon facts.  Although the Guidelines should ordinarily steer the Court's sentencing determination, they are – by their terms – inapplicable here.  A custodial sentence within the ambit of the plea agreement's recommendation would not create unwarranted sentencing disparities.  On the contrary, a sentence that includes a term of imprisonment is necessary to achieve the ends mandated by Section 3553(a).

## CONCLUSION

While employed at a facility that operates at the very center of science, energy, commerce, and national defense, the defendant was engaged in undisclosed meetings with high-level operatives in the intelligence apparatus of a foreign nation.  During the vetting process for a security clearance, she not only lied about that affiliation, she attempted to recruit others to further her lies.  Although the Sentencing Guidelines, as calculated, permit a non-custodial sentence, no Guideline fully captures the scope of conduct for which the defendant now stands convicted.  A term of imprisonment is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a), particularly the need to address the seriousness of this offense, promote respect for the law, and deter others from similar crimes.  The Court should impose such a sentence.

Respectfully submitted this 3rd day of June, 2026.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By:     */s/ Kyle J. Wilson*
        */s/ Casey T. Arrowood*
        Kyle J. Wilson
        Casey T. Arrowood
        Assistant United States Attorneys
        TN BPR No. 031844
        TN BPR No. 038225
        800 Market Street, Suite 211
        Knoxville, TN 37902
        (865) 545-4167
        Kyle.Wilson@usdoj.gov
        Casey.Arrowood2@usdoj.gov

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION

By:     */s/ Nicholas O. Hunter*
        Nicholas O. Hunter
        Trial Attorney
        U.S. Department of Justice
        National Security Division
        DC Bar # 1022355
        950 Pennsylvania Ave., N.W.
        Washington, D.C.  20530
        Nicholas.Hunter@usdoj.gov

11