# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

UNITED STATES OF AMERICA

V.

No. 3:25-CR-94
Judge Varlan

PORTIA ANYAMBA

---

## SENTENCING MEMORANDUM

---

### INTRODUCTION

Comes the Defendant, Portia Anyamba, by and through counsel, and respectfully submits the following Sentencing Memorandum setting forth the factors which the Court should consider in determining the type and length of sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

The United States Sentencing Guidelines are no longer mandatory, but instead provide the "starting point and initial benchmark" for the Court's sentencing decision, but are not the only consideration. Gall v. United States, 552 U.S. 38 (2007); *accord* Cunningham v. California, 549 U.S. 270 (2007). District courts are now required to consider the Guidelines, but should "tailor the sentence in light of other statutory concerns, as well." Kimbrough v. United States, 552 U.S. 85 (2007). As a result, the Court should consider all of the factors set forth in 18 U.S.C. § 3553(a). Gall, 128 S.Ct. at 596.

The primary directive in 18 U.S.C. § 3553(a) is for the sentencing court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph two." 18 U.S.C. § 3553(a)(2) states that such purposes are:

A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

B. to afford adequate deterrence to criminal conduct;

C. to protect the public from further crimes of the defendant; and

D.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kind of sentencing available; (4) the kinds of sentence and the sentencing range established for the type of offense committed by the defendant as set forth in the United Stated Sentencing Guidelines; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

In the present case, United States Probation officer, Katelyn Smith, has calculated Mrs. Anyamba's potential sentence as recommended by the United States Sentencing Guidelines. Mrs. Anyamba's range, as calculated by the Presentence Investigation Report (herein after "PSR"), based on an offense level two (2) and a criminal history category of I, is a range of imprisonment of zero to six months. Because Mrs. Anyamba's guideline range is in Zone A, this Court is authorized to place her on probation.

## APPLICATION OF THE 18 U.S.C. § 3553 FACTORS

I.  **The nature and circumstances of the offense and the history and characteristics of the defendant;**

Ms. Anyamba's life history reflects discipline, public service, education, family responsibility, and resilience across extraordinary circumstances. She was born in Johannesburg, South Africa, and was raised primarily in the Eastern Cape, where she completed her schooling. She was the oldest of nine children. At the age of nine, she assumed substantial household responsibilities, including cooking for the family, doing laundry, completing chores, and tutoring after hours and on weekends. She described her childhood household as stable and positive, with good relationships with her parents. Her father, Ernest Sibiya, passed away in 1996, and her mother, Thokozile Sibiya, remains in South Africa, along with Ms. Anyamba's eight siblings.

Ms. Anyamba's early adulthood unfolded against the political backdrop of apartheid-era South Africa. After secondary school and a brief period of college, she entered exile and became associated with the military wing of the African National Congress during the period when Nelson Mandela remained imprisoned and the

apartheid government remained in power. From 1985 until 1992, she lived in Angola as a refugee, then moved to Nigeria in 1992 to attend school. Records confirm that she later earned a Bachelor of Technology in Mathematics/Computer, with second-class honors, from the Federal University of Technology in Minna, Nigeria, on February 7, 1998.

Ms. Anyamba thereafter returned to South Africa and entered formal military service.  In 1998 she enlisted in the South African Air Force, served for approximately 13 years, and ultimately held the rank of Brigadier General. She also served as a Defense Attaché for the South African National Defense Force at the Embassy of South Africa in Paris, France, and as a Director of Planning for the National Defense Force. From 2007 until 2010, she served as a Defense Attaché at the Embassy of South Africa in Paris. She applied for early retirement from the South African Air Force in 2011 and relocated to the United States.

Her family circumstances also reflect sacrifice and caregiving. Ms. Anyamba married Assaf Anyamba on March 4, 2007, in South Africa. Ms. Anyamba retired from the South African military after he suffered a severe stroke and moved to the United States to care for him. After relocating, she stayed home to care for him until he no longer needed constant care, after which she worked as a physical fitness trainer and pursued additional education. Mr. Anyamba later reported that it had been difficult for Ms. Anyamba to reintegrate into society after leaving the South African military and that she struggled to find suitable employment as most potential employers found her overqualified.

Despite those challenges, Ms. Anyamba continued to build an academic and professional record in the United States. She became a naturalized United States citizen in 2014. She attended the University of Maryland Global Campus from 2012 until 2016, earning a Master of Business Administration on September 13, 2014, and a Master of Science in Management on December 13, 2015. Employment records from UT-Battelle indicate that she also received a Data Analytics Certificate from Johns Hopkins University in Baltimore, Maryland, in 2021. She is fluent in English and reported fluency in eight South African languages.

Taken together, Ms. Anyamba's personal history is not that of a person defined by criminality. It is the history of a woman who grew up with substantial responsibility,

endured displacement and political upheaval, served in demanding public roles, cared for an ill spouse, pursued advanced education after immigration, and now faces sentencing with no prior criminal record and documented physical and emotional vulnerabilities. The character letters submitted on Ms. Anyamba's behalf present a consistent picture of a woman whose life has been marked by caregiving, dependability, faith, service, and quiet support for others. Her family, friends, former neighbors, and community members describe her not as a person defined by this offense, but as someone who has spent decades caring for others, strengthening families, and building community.

## CIRCUMSTANCES OF THE CRIME

Ms. Anyamba has pled guilty to Acting as an Agent of a Foreign Government, in violation of 18 U.S.C. § 951(a), and False Statements, in violation of 18 U.S.C. § 1001(a)(2). Count One alleges conduct from at least in or about February 2024 through on or about November 7, 2024, and Count Two alleges false statements occurring on or about June 20, 2024.

The offense conduct is serious, and Ms. Anyamba does not minimize that seriousness.  At the same time, the record places the conduct in a narrower factual context than cases involving espionage, classified disclosures, violence, threats, obstruction, or identifiable victims. The PSR states that this is a Title 18 offense with no identifiable victim.

The plea materials and PSR describe Ms. Anyamba's conduct as involving contact with an individual identified as an intelligence officer working for the Republic of South Africa's State Security Agency. The PSR states that the investigation revealed Ms. Anyamba had been working in the United States under the direction and control of the government of South Africa and specifically with the SSA since 2022. The PSR further states that she attended public events hosted by United States-based think-tank organizations, wrote reports about those events, submitted reports to IO-1, and received payment or reimbursement for reports and costs associated with travel and attendance.

What the PSR does not explain, is her reason for attending these think tanks and why she agreed to write reports that were shared with the South African government. Ms. Anyamba began attending these think tanks before ever being in contact with this intelligence officer. She started attending them because she found herself without work and with time on her hands. She thought it would be a good way to get involved with the

community and continue her education, along with improving her English writing skills. Her husband told agents he believed she attended think tanks such as the Atlantic Council in an effort to secure work or professional opportunities with those organizations.

That context matters. As Ms. Anyamba has explained, she did not view herself as harming the United States. She went to these events because she was trying to stay engaged in policy circles, build professional connections, and do something she believed was constructive. She believed her writing reflected a positive outlook on the United States and its institutions, not hostility toward them. She has also expressed genuine affection for this country and did not understand herself to be acting in a way that was anti-American.  So, when approached about writing reports on these think tanks, she looked at it as a good opportunity to practice her writing and to report back to the South African government on the great things happening in the United States. She did not write the reports for the money, as it was nominal at best. But rather to share her positive beliefs on America. She did nothing to hurt American interest when writing these reports. Most importantly she was a proud American citizen when taking on the endeavor.

The materials do not describe the reports as containing classified information. The events identified in the PSR were public-facing think-tank or policy events, including events associated with the Atlantic Council, the Heritage Foundation, and the Carnegie Endowment for International Peace. This context does not excuse the offense, but it is relevant to assessing the nature and degree of the harm, the need for just punishment, and the sentence necessary to deter future misconduct.

The false-statement count arises from Ms. Anyamba's security-clearance process. The PSR states that the investigation revealed materially false statements in connection with her attempts to obtain a United States Government security clearance, which would have granted eligibility to access classified information, and that those statements concerned foreign-national and foreign-government contacts. The plea agreement reflects that Ms. Anyamba was employed by UT-Battelle, LLC, a contractor providing services and staffing to Oak Ridge National Laboratory, and that she had been hired in December 2023 as a Program Management Operational Specialist in the National Security Program Office.

Ms. Anyamba submits there was confusion on her part about what role she was playing for South Africa. Her background as a former senior military and diplomatic

official, combined with longstanding professional relationships, appears to have blurred for her the line between informal contact, professional networking, and conduct that federal law required her to disclose. That confusion does not excuse the offense, and Ms. Anyamba does not offer it as an excuse. But it does help explain why this case is better understood as a serious failure of judgment and disclosure, rather than conduct driven by animus toward the United States or an intent to injure it.

Ms. Anyamba acknowledges her failure to notify the Attorney General and her false answers during the clearance process were wrongful and consequential. The Court should also consider her full cooperation with the government. She interviewed with law enforcement when she was initially investigated, agreed with the plea-agreement facts during the presentence process, accepted responsibility for the conduct via an information plea, and met with law enforcement after entering her plea. She has fully owned up to her mistake. A sentence should punish the offense as committed not a more aggravated offense involving classified transmission, violence, obstruction, or victim loss that is not reflected in the record.

## II.      The need for the sentence to be imposed.

### A.  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The offense was serious, and Ms. Anyamba is responsible for it. Her conduct was tied to public events, policy writings, professional uncertainty, and a mistaken belief that she was doing something positive. Just punishment does not require treating her as someone who acted out of disloyalty or malice toward the United States. A sentence of probation would still promote respect for the law by making clear that foreign-government agency and security-clearance disclosure obligations are mandatory, while also recognizing the individualized facts that make this case different from a more aggravated national-security case

### B.  To afford adequate deterrence to criminal conduct.

As outlined in the PSR and this memorandum, Ms. Anyamba reflects discipline, public service, education, family responsibility, and resilience across extraordinary circumstances. She is ashamed to be a convicted felon and believes her reputation has

been tarnished. Furthermore, she feels that her life's work has been thrown away by her mistakes. Ms. Anyamba takes this matter very seriously.

### C. To protect the public from further crimes of the defendant.

The need to protect the public does not require a lengthy custodial sentence. The PSR reports no prior convictions, no pending charges, no other arrests, no other criminal conduct, and no obstruction. Her lack of criminal history, her age, her acceptance of responsibility, and the public consequences of this prosecution all support the conclusion that she presents a low risk of recidivism.

### D. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The need for medical care and correctional treatment also weighs against unnecessary incarceration. Ms. Anyamba has medical and emotional-health considerations. She is 58 years old. She has multiple physical health issues involving her right leg and foot, including prior surgery in South Africa to remove blood clots from her right knee, progressive arthritis, hallux rigidus in her right foot, right-foot surgery on June 11, 2020, and varicose veins in both legs. Medical records also show that she underwent a vein ablation in her right leg on October 6, 2025, and thereafter attended follow-up appointments and was instructed to wear compression stockings. She receives primary care from Dr. John L. Law at Farragut Family Practice in Knoxville and has reported a history of heart palpitations, thyroid issues, cholesterol problems, allergies to pollen, and the use of eyeglasses. As of August 2025, records document that she was prescribed Atorvastatin.

Her mental and emotional health likewise warrant consideration. Records from Farragut Family Practice indicate that she reported anxiety and depression after her husband suffered a heart attack, as well as periods of sadness after moving from South Africa to the United States. During the presentence process, she reported suicidal ideation in the 1980s and recent suicidal ideation related to this legal case. She also reported seeking care and undergoing an assessment with her primary care physician, Dr. Law.

### III. The kinds of sentences available and the sentencing range established by the sentencing guidelines.

As outlined by the PSR, Count Two: Based upon a total offense level of two and a criminal history category of I, the guideline imprisonment range is zero months to six months. Since the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required unless the applicable guideline in Chapter Two expressly requires such a term. USSG §5C1.1(b). For Count Two, the defendant received an adjustment under USSG §4C1.1 (Adjustment for Certain Zero-Point Offenders), and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table. Therefore, a sentence other than a sentence of imprisonment, in accordance with USSG §5C1.1(b) or (c)(3), is generally appropriate. USSG §5C1.1, comment. (n.9). Nothing in the record suggest that the Court should depart from the recommended sentencing guidelines. Ms. Anyamba, respectfully request this court place her on a period of probation.

### IV. The need to avoid unwarranted sentencing disparities among defendants with similar conduct.

Finally, avoiding unwarranted disparities favors a restrained sentence. The PSR reports that Count Two produces a total offense level of 2 and Criminal History Category I. It also reports JSIN data for defendants with primary guideline U.S.S.G. § 2B1.1, final offense level 2, and Criminal History Category I, excluding substantial-assistance departures: over fiscal years 2020 through 2024, the average sentence for all 130 defendants was two months and the median sentence was zero months. While Count One is not governed by a sufficiently analogous guideline and must be evaluated under § 3553, the disparity evidence reinforces that the false-statement guideline component of this case does not call for a lengthy custodial sentence.

Considering the whole person and the actual offense conduct, a sentence of probation will adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future misconduct, protect the public, and address Ms. Anyamba's medical and emotional-health needs.

### V. The need to provide restitution to any victims of the offense.

There is no restitution in this case

## <u>Conclusion</u>

For the reasons stated above, Ms. Anyamba asks this Court to sentence her to a term of probation within the guidelines as this will be sufficient, but not greater than necessary, to comply with the statutory directives outlined in U.S.C.A § 3553(a).

Respectfully submitted this 2nd day of June, 2026.

s/ Joseph A. Fanduzz
Joseph A. Fanduzz (BPR#026296)
800 South Gay Street, Suite 2250
Knoxville, TN 37929
(865) 386-1519

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2026, a copy of the foregoing Motion was filed electronically. Notice of the filing will be sent by operation of the Court's Electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. mail. Parties may access this filing through the Court's electronic filing system.

This the 2nd day of June, 2026.

s/ Joseph A. Fanduzz
Joseph A. Fanduzz